United States District Court
Southern District of Texas

**ENTERED**

April 21, 2026

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANDREAS AND STACEY KLINCKWORT, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:26-CV-00505 |
| | § | |
| MERIDIAN SECURITY INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| *Defendant*. | | |

## ORDER

Pending before this Court is Defendant Meridian Security Insurance Company's ("Meridian") Motion to Compel Appraisal and to Abate. (Doc. No. 4). Plaintiffs Andreas Klinckwort and Stacey Klinckwort (collectively, "Plaintiffs") responded, (Doc. No. 6), and Meridian replied (Doc. No. 7). Upon careful review of the pleadings, uncontested facts, and relevant legal standards, the Court hereby **GRANTS** the Motion to Compel Appraisal and to Abate (Doc. No. 4).

### I.     Factual Background

This is a first-party insurance dispute. To address the issue of appraisal, the Court finds that it may be helpful to set out a timeline of the events in the dispute based on the documents and uncontested facts provided by both parties. On May 28, 2024, the Plaintiffs allege that a severe hailstorm damaged their property located in Montgomery, Texas. (Doc. No. 1-4 at 5). Nearly one year later, on March 27, 2025, the Plaintiffs submitted a claim for this alleged storm damage to their home insurance company, Meridian. *See* (Doc. No. 6-2). Meridian hired a third-party adjuster, and the property was inspected on April 1, 2025. *See* (Doc. No. 6-3). The third-party

adjuster determined that "[no] wind or hail damage was found on any slope." (*Id.* at 3). Accordingly, Meridian determined that the "only observable covered damage" from the storm was to a window screen and the downspouts on the property. (Doc. Nos. 6-4, 6-5). Nevertheless, Meridian found that those repair costs fell well below the deductible, and Meridian sent a partial denial letter to the Plaintiffs. (*Id.*).

After the partial denial letter, the Plaintiffs retained a public adjuster, and the public adjuster requested "an additional inspection of the dwelling to address the damages that were not addressed or not adequately address at the initial inspection." (Doc. No. 6-6). Subsequently, Meridian complied with the request and retained a second third-party adjuster to inspect the property on July 1, 2025. (Doc. No. 6-7). The second inspection report stated that while the window screen and metal downspouts were damaged by hail, "the exterior wall siding finished are not hail damaged" and "the roof shingles are not hail damaged." (Doc. No. 6-7 at 13–14). Meridian then issued another partial denial letter to the Plaintiffs, stating that:

> Based on the inspection report, the shingles have no damage caused from hail damage. Your roof does show signs of normal wear, tear and maintenance related issues for a roof of its age. There is no coverage to replace the roof as wear, tear and maintenance are not covered under your policy. Coverage has been allowed to replace the hail damaged window screen and downspouts that was document[ed] in the initial inspection of your home.

(Doc. No. 6-8).

On August 29, 2025, Plaintiffs' counsel sent Meridian a pre-suit notice in accordance with the Texas Insurance Code. (Doc. No. 6-9). On September 26, 2025, Meridian responded to the pre-suit notice and stated that "this letter shall serve as written request to inspect, photograph, or evaluate, in a reasonable manner and at a reasonable time, the property that is the subject of the claim." (Doc. No. 6-10). On December 5, 2025, the Plaintiffs filed this lawsuit in Montgomery

2

County, Texas state court, and Meridian later timely removed the case to this Court. (Doc. No. 1-4). On December 10, just five days after the Plaintiffs filed the lawsuit, Meridian sent a letter to demand appraisal pursuant to the insurance policy. (Doc. No. 5). The policy states:

> **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the Described Location is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

(Doc. No. 6-1 at 66).

To date, the Plaintiffs have not submitted to the appraisal. As a result, Meridian filed its Motion to Compel Appraisal on January 29, 2026, arguing that the appraisal clause in the insurance policy mandates compliance with the appraisal process. (Doc. No. 4). The Plaintiffs have taken the position that Meridian has "arguably waived its right to appraisal" and that appraisal is not appropriate in cases "where the fundamental dispute concerns coverage and not the amount of loss." (Doc. No. 6). The Court addresses the pending Motion below.

## II.    Analysis

Appraisal clauses "provide a means to resolve disputes about the amount of loss for a covered claim." *In re Universal Underwriters of Tex. Ins.*, 345 S.W.3d 404, 407 (Tex. 2011). "These clauses are generally enforceable, absent illegality or waiver." *Id.* Because appraisals "can provide a less expensive, more efficient alternative to litigation," *id.*, the Texas Supreme Court has held that appraisals "should generally go forward without preemptive intervention by the courts." *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 895 (Tex. 2009). Nevertheless, the Plaintiffs argue

that the Court should not compel appraisal in this case because (1) appraisal is not appropriate for coverage disputes and (2) Meridian has waived its right to appraisal through delay and prejudice to the Plaintiffs. The Court addresses each of these arguments, in turn.

### A. Appropriateness of the Appraisal

The Plaintiffs argue that "appraisal is not a proper mechanism to resolve this claim because the primary dispute pertains to coverage for alleged storm damage to the roof . . . and is not a dispute regarding the amount of loss." (Doc. No. 6 at 4). It is well-settled that an appraiser must "decide the 'amount of loss,' not to construe the policy or decide whether the insurer should pay." *Johnson,* 290 S.W.3d at 890. Nevertheless, "[u]nless the amount of loss will never be needed . . . appraisals should generally go forward without preemptive intervention by the courts." *Id.* at 895.

The Plaintiffs argue that the July 7, 2025 Coverage Letter was a full denial of the claims based on policy *coverage*—not the amount of loss. Accordingly, the Plaintiffs contend that appraisal would not be appropriate case because the amount of loss is not at issue. Nevertheless, while the Coverage Letter states that "[t]here is no coverage to replace the roof as wear, tear and maintenance are not covered under your policy," it also states that "[c]overage has been allowed to replace the hail damaged window screen and downspouts that was document[ed] in the initial inspection of your home." (Doc. No. 6-8). The Letter also referred to and included the initial estimate for these repairs, which Meridian determined fell below the policy deductible. (Doc. Nos. 6-5, 6-8). The Court finds that the two Coverage Letters were only partial denials of the claims, and the amount of loss for the repairs to the window screen and downspouts remain at issue.

Furthermore, the Court notes that the amount of loss related to the alleged damages to the roof may still be relevant in this case. The Supreme Court of Texas has advised that "[w]hen an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to

be wrong." *Johnson*, 290 S.W.3d at 894. While the *Johnson* court recognized that there may be cases in which "appraisal is so expensive and coverage is so unlikely that it is worth considering beforehand whether an appraisal is truly necessary," such is not the case here. *Id.* at 895. The Court finds that the appraisal process will benefit all Parties to determine the amount of loss for the alleged hail-related damages to the roof "in case the insurer turns out to be wrong." *Id.*

## B. Waiver

The Plaintiffs also contend that Meridian has "waived its right to appraisal through delay and prejudice." It is undisputed that the right to demand appraisal may be waived. *See, e.g., JM Walker LLC v. Acadia Ins.*, 356 F. App'x 744, 748 (5th Cir. 2009). "Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances." *Wright v. ASI Lloyds*, No. 23-40719, 2025 WL 1588832, at *5 (5th Cir. June 5, 2025) (per curiam) (quoting *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 298 (5th Cir. 2010)). "Waiver of an appraisal clause occurs if (1) the parties previously reached an 'impasse'; (2) following the impasse, one party unreasonably delayed seeking an appraisal; and (3) that party's delay was prejudicial." *Elevia, Inc. v. Amguard Ins. Co.*, No. H-19-4028, 2020 WL 6192008, at *2 (S.D. Tex. May 21, 2020). An impasse is a "mutual understanding that neither [party] will negotiate further" and "is not the same as a disagreement about the amount of loss." *Universal Underwriters*, 345 S.W.3d at 410. The Supreme Court of Texas has advised that "[o]ngoing negotiations, even when the parties disagree, do not trigger a party's obligation to demand appraisal." *Id.* "[W]hile an unreasonable delay is a factor in finding waiver, reasonableness must be measured from the point of impasse." *Universal Underwriters*, 345 S.W.3d at 408.

5

The Plaintiffs contend that Meridian unreasonably delayed invoking the right to appraisal after the parties reached an impasse when the public adjuster became involved on April 16, 2025, *see* (Doc. No. 6-6), which "effectively put Meridian on notice that there was a dispute regarding the claim approximately eight months before Meridian attempted to invoke appraisal on December 10, 2025." (Doc. No. 6 at 6). Nevertheless, the point of impasse must be the "breakdown of good-faith negotiations such that *both parties* understand that further negotiations would be futile." *Universal Underwriters*, 345 S.W.3d at 410. On the current record, the Court does not find evidence that a complete breakdown of good-faith negotiations occurred at or around the time that the Plaintiffs retained the public adjuster. In fact, the parties continued to negotiate the claim through a second inspection, second coverage letter, and the pre-suit notice through September 2025. Even in its response to the pre-suit notice, Meridian requested to again inspect the property. *See* (Doc. No. 6-10) ("Please contact me at your earliest convenience to make arrangements for this inspection."). There were no communications presented to the Court that would indicate an impasse between the response to the pre-suit notice on September 26, 2025, and December 5, 2025, the date that the lawsuit was filed.

Without any evidence of an impasse during the pre-suit negotiations, the Court turns to the filing of the lawsuit. "[T]he filing of a lawsuit does not always indicate a mutual impasse . . . it signifies only a 'unilateral conclusion' that the parties were at an impasse." *Hamorsky*, 455 F. Supp. 3d at 298 (quoting *Universal Underwriters*, 345 S.W. 3d at 409). Given that the documents do not indicate a moment of impasse, or a total breakdown of negotiation, prior to the lawsuit, the Court is only left with the "unilateral conclusion" that the parties were at an impasse. Accordingly, the Court finds that under the facts and circumstances of this case, the point of impasse is the date that the Plaintiffs filed this lawsuit. *See, e.g., Harkless v. Allstate Vehicle*, No. 4:23-CV-02097,

2024 WL 5275031, at *2 (S.D. Tex. Jan. 12, 2024) ("[I]t is apparent from the evidence before the Court that a point of impasse in negotiations was not reached until Plaintiff filed her lawsuit."); *Pek v. Allstate Vehicle and Prop. Ins. Co.*, 2019 WL 6652011, at *3 (E.D. Tex. Mar. 14, 2019) ("Impasse occurred . . . when Plaintiffs filed suit in this matter.").

Meridian sent its written notice demanding appraisal just five days after the Plaintiffs filed this lawsuit. (Doc. No. 6-11). The Court finds that Meridian was not "unreasonably delayed seeking an appraisal." *Elevia, Inc.*, 2020 WL 6192008, at *2. Finding that there was no unreasonable delay, the Court holds that Meridian did not waive its right of appraisal.

The Court holds that Meridian invoked its demand for appraisal within a reasonable time after the lawsuit was filed and that Meridian did not waive its right of appraisal. The Court also finds that while there is a coverage dispute in this case, an appraisal is still relevant to the claims in this case. Therefore, the Court hereby **GRANTS** the Motion to Compel Appraisal (Doc. No. 4).

## C. Abatement

Having concluded that these claims are subject to appraisal, the Court now considers whether this case should be abated pending the resolution of the appraisal. The Plaintiffs argue that even if this Court compels appraisal, this case should not be abated because "[a]ppraisal would not address the numerous other causes of action at issue in this litigation." (Doc. No. 6 at 9). "In evaluating a motion to stay or abate proceedings to allow for completion of an insurance appraisal, the primary question is whether the stay will 'aid judicial efficiency and economy.'" *Rockbrook Place Townhomes Assoc., Inc. v. LIO Ins. Co.*, No. 4:24-CV-1021, 2025 WL 2533999, at *4 (E.D. Tex. Sep. 3, 2025) (quoting *Gonzalez v. Allstate Fire & Cas. Ins.*, No. SA-18-CV-283, 2019 WL 609781, at *2 (W.D. Tex. Jan. 7, 2019)).

7

Meridian contends that "abating this action until the appraisal is complete may wholly or partially obviate the need for further litigation, thereby preserving limited judicial resources and avoiding unnecessary time and expense spent by the parties" and that "abatement will properly effectuate the intent of the appraisal clause by allowing the parties to contractually resolve the amount of loss." (Doc. No. 4 at 11). The Court agrees that the appraisal may streamline the issues raised in this lawsuit, and in the interest of judicial economy and resources, the Court **GRANTS** the Motion to Abate (Doc. No. 4).

### III.   Conclusion

For the foregoing reasons, the Court **GRANTS** the Motion to Compel Appraisal and to Abate. (Doc. No. 4). The Plaintiffs are ordered to provide the name, address, and contact information of their chose appraiser to Meridian by **May 15, 2026.** This case is abated and administratively closed pending appraisal. The Parties should notify the Court within ten (10) days of the completion of the appraisal process.

It is so ordered.

Signed on this the ___21st___ day of April 2026.

Andrew S. Hanen
United States District Judge

8